**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Dominique Yammine

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOMINIQUE YAMMINE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECT FUNDING NOW, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1. **THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227,** *ET SEQ***.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Dominique Yammine ("Plaintiff") brings this Class Action Complaint against Defendant Direct Funding Now, LLC ("Defendant" or "Direct Funding") to stop Defendant from violating the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA") and invading the privacy of Plaintiff and the putative class by making unsolicited telemarketing calls purpose of soliciting business using a pre-recorded and/or artificial voice without their consent in violation of the TCPA. Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's unlawful conduct.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. Upon information and belief, Defendant placed the automated calls, using an artificial or pre-recorded voice, to Plaintiff and others similarly situated without their consent in order to market its lending services.

4. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

5. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

6. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited artificial and prerecorded voice phone calls as well as an award of statutory damages to the members of the Class (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations)

//

**NATURE OF THE ACTION**

7. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), in response to complaints about abusive telemarketing practices.

8. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

9. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

10. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

11. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- Prohibit solicitors from calling residences before 8 a.m. or after 9p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry.

12. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration,* 23 FCC Rcd. 559, 565 ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.,* 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012)

13. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

14. As alleged with specificity herein, Defendant is a full-service lender who advertises its services to consumers throughout the country, including within this District.

15. In Defendant's overzealous attempt to market its services, however, Defendant knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls with an artificial or pre-recorded message without the prior express written consent of the call recipients.

16. Through this method, Defendant has invaded the personal privacy of Plaintiff and members of the Class.

17. Additionally, upon information and belief, based upon the number of lawsuits filed against Defendant, it has also intentionally and repeatedly violated the TCPA.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the TCPA, a federal statute. 47 U.S.C. § 227(c).

19. The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. §1391(b) because: (1) Defendant is a California Limited Liability Company, with its principal place of business located at: 15420 Laguna Canyon Road #200 Irvine, California, 92618; and (2) it conducts significant business in this District.

## PARTIES

20. Plaintiff is an individual residing in South Easton, Massachusetts, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. §

1  153(39).

2  21. Upon information and belief, Defendant is a Limited Liability Company
3  formed under the laws of the State of California with its principal place of business
4  at 15420 Laguna Canyon Road #200 Irvine, California 92618.

5  22. Plaintiff is further informed and believes that Defendant is a leading
6  provider for small business funding.

7  23. Whenever in this Complaint it is alleged that Defendant committed any
8  act or omission, it is meant that the Defendant's officers, directors, vice-principals,
9  agents, servants, or employees committed such act or omission and that at the time
10 such act or omission was committed, it was done with the full authorization,
11 ratification or approval of Defendant or was done in the routine normal course and
12 scope of employment of the Defendant's officers, directors, vice-principals, agents,
13 servants, or employees.

**FACTUAL ALLEGATIONS**

15 24. Upon information and belief, Defendant owns and operates a website,
16 directfundingnow.com (the "Website"), which advertises its small business funding
17 solutions services.

18 25. According to Defendant's Website, Defendant has "matched more than
19 $1.2 billion in small business loans to thousands of businesses from a wide range of
20 industries."

21 26. At all relevant times, Plaintiff was assigned, and was the owner of, a
22 cellular telephone number ending in - 6158 ("Cell").

23 27. Plaintiff is the subscriber of the Cell and is financially responsible for
24 phone service to the Cell.

25 28. Plaintiff has never utilized Defendant's services, provided his Cell
26 number to Defendant, or consented to received automated or pre-recorded calls from
27 Defendant in any manner.

28 29. Plaintiff also never entered into any type of business relationship with

Defendant.

30. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted for marketing purposes.

31. Notwithstanding the foregoing, on Wednesday, December 13, 2023, at 11:12 a.m., Plaintiff received an unsolicited telephone call from Defendant (and/or through its affiliates and agents), from a (508) 492-6528 telephone number in an attempt to solicit Defendant's loan services.

32. Plaintiff received this unsolicited telemarketing call on his Cell, which interrupted his day-to-day activities because he has to stop what he was doing to answer this call.

33. Upon information and belief, Defendant made this unauthorized telephone call to Plaintiff's Cell using an artificial and/or pre-recorded voice (as defined by 47 U.S.C. § 227) for the purpose of soliciting business from Plaintiff.

34. Upon answering the call, Plaintiff was connected to an automated voice (and not a live person) who began asking Plaintiff if he needed business financing.

35. Due to the cadence and tone of the artificial and/or pre-recorded voice, Plaintiff was able to discern that, at the outset of the call, there was not a live representative on the line.

36. The automated computerized voice eventually transferred Plaintiff to a live person named "Daniel."

37. Upon information and belief, "Daniel" is an agent, employee and/or representative of Defendant.

38. During that call, Daniel informed Plaintiff that Daniel worked for Defendant in Irvine, California and that Defendant was a full-service lender.

39. Daniel also told Plaintiff that Defendant's telephone number was (949) 407-6129.

40. Frustrated that he was receiving an unwanted telemarketing call, Plaintiff asked Daniel where Defendant obtained Plaintiff's contact information

from.

41. Daniel informed Plaintiff that his contact information likely came from a call center or maybe Experian. However, Daniel was unable or unwilling to provide a clear answer.

42. Upon information and belief, including the nature of the services pitched to Plaintiff, the call was placed to Plaintiff's Cell in order to market Defendant's products and services, and it was placed for the benefit of Defendant.

43. When Plaintiff picked up the call on December 13, 2023, Plaintiff was able to quickly determine that it was an automated or pre-recorded voice, and that he was not speaking to a live representative. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10- 11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

44. It was evident to Plaintiff that the voice he heard at the outset of the call was not a live agent because, *inter alia*: (a) the generic content of the voice message; and (b) the tone, cadence and inflection of the voice, which sounded to the Plaintiff's ears like an artificial or prerecorded voice, rather than a live individual on the line.

45. Plaintiff has previously received phone calls using an automated or pre-recorded voice and regular non-automated or pre-recorded and can differentiate the characteristics and sounds of a prerecorded voice message in contrast to a live agent.

46. Based on the Plaintiff's own personal experience, the voice at the outset of the call received from Defendant clearly was not a live person.

47. Plaintiff further alleges that to the degree Defendant did not place the call to Plaintiff's Cell itself, Defendant is vicariously liable for calls placed by its telemarketing employees, agents, or representatives under ordinary agency principles because, upon information and belief, Defendant directed, authorized, or otherwise ratified the conduct, which resulted in the statutory violations alleged in this

Complaint.

48. Indeed, by marketing its products directly to Plaintiff on the call that followed the pre-recorded/ automated voice, Defendant demonstrated consent of the placement of the initial pre-recorded/automated voice call made on its behalf and thereby ratified the conduct of any telemarketing agents involved in the call.

49. Additionally, the smooth transfer from the initial automated or pre-recorded voice to "Daniel" shows a cooperative relationship from which one may infer authority or apparent authority of Defendant to the initial contact by a pre-recorded or artificial voice.

50. Upon information and belief, Defendant has accepted the benefits of its unlawful telemarketing practices by allowing unauthorized pre-recorded/automated voice calls to be made to consumers and accepting payment from new customers and accounts that Defendant had knowledge were generated through such telemarketing campaigns as the one alleged herein.

51. Defendant's call to Plaintiff's Cell was not for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A)(i).

52. Plaintiff did not provide Defendant "prior express written consent" to receive telemarketing calls to his cellular telephone utilizing a pre-recorded voice, pursuant to 47 U.S.C. §227(b)(1)(A).

53. Plaintiff also did not provide regular "prior express consent" to receive any prerecorded call from Defendant.

54. The unwanted telephone call Defendant made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. §227(b)(1).

55. Plaintiff has reason to believe that Defendant has called at least thousands of wireless telephone customers with pre-recorded/automated voice messages to market its products and services without prior express written consent and/or after consumers revoked their consent in a reasonable manner due to several TCPA lawsuits and class actions complaining of unsolicited marketing calls.

56. Consumers have also posted their frustrations with Defendant's business practices online.

57. For instance, once consumer posted the following message on Yelp (htttps://www.yelp.com/biz/direct-funding-now-irvine?rr=1) on February 20, 2023: "No legitimate lender uses spoofed local phone numbers to robo call the same business multiple times a week. This could be a phishing scam."

58. Another consumer posted on Yelp on February 9, 2023 with a similar complaint:

> Scam! They've been calling me from a spoofed number and leave a voicemail every time telling me to call back a different number. When I called them back they told me that I requested a call back ( I didn't ) and I told them to stop calling. They fill up my voicemail will TONS of the same message so I went through with their scam so I could find out who is behind it all and found out it was RegalCapGroup and Direct Funding Now LLC by CHRISTIAN MURILLO.

59. Consumers have also voiced their concerns on Trustpilot (https://www.trustpilot.com/review/www.directfundingnow.com?stars=1).

60. On December 26, 2023, a consumer posted a review on Trustpilot about Defendant stating:

> I'd give them 0 if I could. These guys are hacks, spammers of the worst kind. They picked my name, I guess, from LinkedIn. I NEVER opted into their BS communications, and I get multiple traps each day--complete your partially completed application (I never applied for anything), your application has passed our review (I never applied for anything). I've blocked them, but apparently they don't care, they keep spamming me. They're either incompetent or phishing.

61. Another consumer posted on May 24, 2023 to Trustpilot stating, in part: ". . . [t]hese scam calls started with a few of our phones, but now appear regularly on all of our lines with 'Kate' (an automated message that is identical every time)

shilling 'Direct Funding'. . ."

62. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and the Class of similarly situated individuals, bring suit under the TCPA 47 U.S.C. § 227, *et seq.,* which prohibits certain unsolicited calls to cellular phones.

63. On behalf of Plaintiff and the Class, Plaintiff seeks an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees for the unlawful calls.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated.

65. Plaintiff seeks to represent, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

> All persons within the United States who received any telephone call/s from Defendant, its employees and/or agents, for the purpose promoting Defendant's goods or services, to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented in writing to receiving such call within the four years prior to the filing of this action.

66. Plaintiff reserves the right to modify the definition of the Class as warranted as facts are learned in further investigation and discovery.

67. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

68. The exact size of the Class is presently unknown but can be ascertained through a review of Defendant's records, and it is clear that individual joinder is impracticable. Defendant made telephone calls to thousands of consumers who fall

into the definition of the Class.

69. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

**Numerosity**

70. The members of the Class are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited calls to hundreds, if not thousands, of customers' cellular telephones nationwide using an artificial or prerecorded voice, during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

71. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

   a) Whether Defendant's conduct violated the TCPA;
   b) Whether the Class members are entitled to treble damages based on the willfulness of Defendant's conduct;
   c) Whether Defendant made phone calls to customers using a pre-recorded voice to any telephone number assigned to a cellular phone service; and,
   d) Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

**Typicality**

72. Plaintiff is qualified to, and will, fairly and adequately protect the

interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all members of the Class, as demonstrated herein.

73. Plaintiff represents and is a member of the Class because Plaintiff received at least one call using a prerecorded/automated voice, without prior express consent within the meaning of the TCPA to solicit Defendant's business. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other members of the Class that Plaintiff seeks to represent.

74. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

**Adequacy**

75. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each member of the Class with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any members of the Class. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.

76. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each member of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other members of the Class.

**Predominance**

77. Questions of law or fact common to the members of the Class

- 13 -
CLASS ACTION COMPLAINT

predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

79. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each member of the Class. Further, it will prevent the very real harm that would be suffered by numerous members of the Class who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

80. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party members of the Class to protect their interests.

81. The prosecution of individual actions by members of the Class would establish inconsistent standards of conduct for Defendant.

82. Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

83. The Class may also be certified because:

(a) the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

84. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***
**ON BEHALF OF THE CLASS**

85. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

- 15 -
CLASS ACTION COMPLAINT

86. The forgoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*. Defendant's repeated calls using an artificial and/or prerecorded voice to Plaintiff's cellular phone, without any prior express consent.

87. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all members of the Class are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

88. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all members of the Class are also entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

### SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. § 227 *ET SEQ*.
### ON BEHALF OF THE CLASS

89. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

90. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

91. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all members of the Class are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

92. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all members of the Class are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Class;
- Appointing the law firm representing Plaintiff as Class Counsel;
- Pre-judgment and post-judgment interest;
- Costs of suit;
- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***

- An award of $500.00 in statutory damages to Plaintiff and each member of the Class for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future;
- Any other further relief that the court may deem just and proper.

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***

- An award of $1,500.00 in statutory damages to Plaintiff and each member of the Class for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);
- Any other further relief that the court may deem just and proper.

**JURY DEMAND**

93. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: December 20, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: s/ *ABBAS KAZEROUNIAN, ESQ.*
ABBAS KAZEROUNIAN, ESQ.
PAMELA E. PRESCOTT, ESQ

*ATTORNEYS FOR PLAINTIFF*